Eastern District of Kentucky
**FILED**

SEP 2 2 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-19-JBC

BENNIE J. DRAKE,                                                      PLAINTIFF

V.                     **PROPOSED FINDINGS OF FACT
                        AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
   Social Security Administration,                                   DEFENDANT

* * * * * * * * * *

## I. INTRODUCTION

Plaintiff Bennie J. Drake, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision that based on his application for Disability Insurance Benefits (DIB) filed on October 20, 2003, he was not disabled.

This matter is before the court on cross-motions for summary judgment. [DE ##7, 8].

By Order of June 22, 2006, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff alleged that he became disabled on September 15, 1999, due to left arm problems, diabetes, and high cholesterol. (Tr. 18). Plaintiff has a GED and has past relevant work (PRW) experience as a truck driver, heavy equipment operator, and farmer. Plaintiff's DIB application was denied initially and on reconsideration, resulting in a an ALJ hearing held on February 25, 2005. On June 21, 2005, ALJ Don C. Paris found that plaintiff had not been disabled at any time through the date of that decision; therefore, he was not entitled to disability benefits under his DIB application. (Tr. 17-25).

Subsequently, on November 9, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 8-10), resulting in the filing of this action for judicial review of the Commissioner's decision.

Summarizing the ALJ's findings, the ALJ found that (1) claimant's insured status expired on December 31, 2004, (2) claimant has not engaged in substantial gainful activity since his alleged onset date, (3) claimant's left upper extremity problems, including arm and wrist stiffness and diminished ranges of shoulder motion status-post left wrist surgery secondary to old traumas are "severe" impairments based on 20 C.F.R. § 404.1520(c); however, these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; (4) claimant's allegations concerning his limitations are not totally credible; (5) claimant is unable to perform any of his past relevant work (PRW); (6) claimant has no transferable skills from any PRW; (7) claimant has the residual functional capacity (RFC) to perform a significant range of medium work, with certain restrictions; (8) although claimant's exertional limitations do not permit him to perform the full range of medium work, using Medical-Vocational Rule 203.15 as a framework for decision-making, and based on vocational expert testimony, there is a significant number of jobs in the national economy that claimant can perform, such as work as packer and cleaner; and (9) claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the ALJ decision, June 21, 2005. (17-25).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, see 42 U.S.C. § 405(g); Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th

Cir. 1990), (quoting <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981, <u>cert. denied</u>, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case <u>de novo</u>, resolve conflicts in evidence, or decide questions of credibility. <u>Garner v. Heckler</u>, 745 F.2d 383 (6th Cir. 1984).

## IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, plaintiff asserts that (1) the ALJ improperly rejected the opinion of plaintiff's treating physician and the opinion of Dr. Templin and gave too much weight to the consultative opinion of Dr. Coble, a one-time examining physician; (2) the ALJ failed to recognize the "worn-out worker exception" for those claimants over age 55 in formulating his hypothetical question to the VE; (3) the failed to address all of the medical evidence of record; (4) the ALJ erred in finding plaintiff's testimony not fully credible; and (5) the ALJ failed to comply with SSR 00-4p concerning the <u>Dictionary of Occupational Titles</u>. For these reasons, plaintiff submits that the ALJ's decision is not supported by substantial evidence, that the Commissioner's decision should be reversed, and that he should be awarded disability benefits. Alternatively, plaintiff argues that this matter should be remanded to the Commissioner under sentence four (4) of 42 U.S.C. § 405(g).

In response, the defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion/Analysis

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decision, the medical evidence of record, and the transcript of the ALJ hearing.

**A.      ALJ's evaluation of the medical evidence**

**i.      ARH Campton Medical Clinic**

3

The progress notes from the ARH Campton Medical Clinic reflect that plaintiff has been a patient at the clinic since 1994 and has been seen, evaluated, and treated for various conditions and ailments by various medical personnel during that time. On February 3, 2000, plaintiff presented himself to the ARH Campton Medical Clinic for medication refills relative to his diabetes and also stated that he had fallen in late December 1999 and had complaints of lower back pain at that time, apparently related to the fall in December. (Tr. 192). After examination and evaluation by both a nurse and a physician, the progress notes state:

> He can use tylenol to augment the treatment of pain and he can use heating pads as directed. he needs to return in two weeks if there is not considerable improvement for re-evaluation. Education per diagnosis and medication. RTC otherwise noted. verbalized understanding.

(Tr. 192).

There is no indication in the ARH Campton Medical Clinic progress notes that plaintiff returned to the clinic, subsequent to his February 3, 2000 complaints of back pain, for re-evaluation and/or treatment of his lower back pain. The medical evidence of record reflects that plaintiff made no further complaints of back pain from February 3, 2000, until January 5, 2005, when he was examined by Dr. James W. Templin.

**ii.      Dr. Coble's report**

On December 11, 2003, plaintiff underwent a consultative examination by Dr. William L. Coble, Jr. Dr. Coble reported that plaintiff's chief complaints were left arm pain, chest pain, and diabetes. As to plaintiff's musculoskeletal condition, Dr. Coble reported, as follows:

> MUSCULOSKELETAL: The patient has normal grip strength. There is decreased range of motion in the shoulder with abduction on the left of 120 degrees secondary to stiffness; otherwise, normal. All other range of motion examinations were normal. There were no detectable paraspinal muscle spasms. Negative straight leg raising in both the sitting and supine positions. There is no impairment in toe or heel walking. The patient had no difficulty getting on and off of the examination table. No motor deficits are noted. There is no evidence of nerve root compression.

Tr. 226-27.

4

With the exception of the moderate restriction in plaintiff's ability for lifting, reaching, and handling objects associated with to his left arm trauma, Dr. Coble stated that there were no other restrictions in plaintiff's activities at that time. (Tr. 227).

### iii.   Dr. Templin's report

On January 6, 2005, Dr. James W. Templin, performed a consultative examination of plaintiff.[1] Based on that examination on January 6, 2005, Dr. Templin diagnosed chronic low back pain and degenerative lumbar disc disease. (Tr. 273). Relative to this diagnosis, Dr. Templin concluded that plaintiff is unable to engage in activities requiring prolonged standing, walking, frequent bending, stooping, squatting, kneeling, crouching, lifting, carrying, climbing, or riding in or on vibratory vehicles for any extended distance or time. (Tr. 274).

In considering plaintiff's complaints of back pain and the medical evidence regarding plaintiff's complaints of back pain and any treatment therefor, the ALJ analyzed this matter, as follows:

> The undersigned has carefully considered the claimant's February 2000 back pain complaint and given significant consideration to whether it is materially related to his January 6, 2005 back pain complaint. After consideration of the evidence as a whole, the undersigned finds no meaningful connection between the two complaints capable of bridging the expansive time gap and relieving the January 2005 complaint's malady of being made after the claimant's date of last insurance. The claimant's February 2000 back pain complaint appears to be an isolated complaint made after a fall in late December 1999. The claimant presented his complaint only one time and never to an acceptable medical source. "Back pain" was diagnosed, and the claimant received medication for his pain. He never followed-up with additional complaints, however. Moreover, the intervening record of nearly five years reveals no other back, hip, or lower extremity pain complaints. Indeed, Dr. Coble's physical examination revealed that the claimant ambulated with ease and displayed no medical signs consistent with back, hip, or other extremity pain. The claimant's testimony that his back pain began approximately 2½ years earlier finds no support in the medical evidence of record and adds further support to a finding that there is no connection between his February 2000 and January 2005 back complaints. The claimant's February 2005 testimony of back pain for 2½ years would reach only back to August 2002 - or 2½ years *after* his only other complaint of back pain. Moreover,

_____

[1] On application, plaintiff alleged an onset date of September 15, 1999; however, in Dr. Templin's report, Dr. Templin states that plaintiff continued working until September of 2003 (Tr. 271).

the undersigned notes that the claimant does not alleged [sic] any back, hip, or lower extremity pain in his October 31, 2002 Adult Disability Report.  (Ex. 1E).

Tr. 19.  (emphasis in original).

For the reasons stated in the ALJ's opinion, the Magistrate Judge is unpersuaded by plaintiff's argument that the ALJ erred in evaluating the medical evidence.  Plaintiff's argument concerning the weight given to the treating physician's opinion relative to plaintiff's low back pain is misplaced as there is no medical opinion by any treating source that plaintiff is disabled by his low back pain or low back condition.  The only treating source opinion of record concerning plaintiff's low back condition is contained in the progress notes from the ARH Campton Medical Clinic when plaintiff's visited the clinic on February 3, 2000, wherein plaintiff's complaints of low back pain are noted, and he was prescribed medication and told to return in two weeks if his back pain had not improved.  There is no statement in these progress even alluding to plaintiff being disabled by his low back pain.

As to the reports of the consultative examiners, Dr. Coble and Dr. Templin, the Magistrate Judge finds no fault with the ALJ for giving more weight to the opinion of Dr. Coble than to that of Dr. Templin.  As the ALJ explained, Dr. Coble's physical examination revealed that plaintiff ambulated with ease and displayed no medical signs consistent with back, hip, or other extremity pain in December of 2003, and that plaintiff's testimony that his back pain began approximately 2½ years earlier finds no support in the medical evidence of record and adds further support to a finding that there is no connection between his February 2000 and January 2005 back complaints. Additionally, since plaintiff's insured status expired on December 31, 2004, Dr. Templin's examination of plaintiff on January 6, 2005, occurred after plaintiff's insured status had expired, and there was no evidence of record to connect plaintiff's complaints of back pain made to Dr. Templin back to plaintiff's complaints of back pain made five years earlier to the ARH Campton Medical Clinic in February of 2000.

Consequently, the Magistrate Judge is unpersuaded by plaintiff's argument that the ALJ erred in evaluating the medical opinions of the foregoing physicians.

6

**B.     Failure to consider all of the medical evidence of record**

Plaintiff also claims that the ALJ's decision is flawed because in finding that plaintiff was not disabled, the ALJ failed to consider all of the medical evidence of record, such as evidence of plaintiff's uncontrolled diabetes, a cardiac impairment, and orthopedic impairments in his left hand, with the resultant pain and suffering that compromised his ability to return to his past relevant work.

A review of the ALJ's decision reflects that the ALJ did address plaintiff's left hand problems.  In fact, the ALJ specifically found that plaintiff had severe medically determinable impairments related to his left upper extremity problems. (Tr. 18).  Also, the ALJ noted that plaintiff fractured his left humorous in September 1989, and that in July 1992, he fractured his left distal radius (Tr. 18, 266, 270).  The ALJ noted that in March 1993, plaintiff underwent operative excision of a distal ulnar styloid un-united fragment and underwent the same procedure in April 1994 after his ulnar styloid had regrown.  (Tr. 18, 262-63).

Additionally, the ALJ specifically noted that the medical evidence established several non-severe impairments, including diabetes mellitus, gastroesophageal reflux disease, and hyperlipidemia (Tr. 18).  The ALJ noted that the treatment records reflected that plaintiff's diabetes mellitus was poorly controlled; however, the ALJ found that when plaintiff was compliant with diet and medications, his diabetes, gastroesophageal reflux disease, and hyperlipidemia had no more than a minimal effect on his abilities to perform basic work activities.  (Tr. 18, 178-94, 204-09).  *See Maziarz v Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) (non-severe finding, harmless error if other severe impairment found); *Hamilton v. Secretary of Health and Human Services*, 991 F.2d 795 (Table), 1993 WL 106845 (6th Cir. Apr. 9, 1993); *Ball v. Secretary of Health and Human Services*, 931 F.2d 893 (Table), 1991 WL 66051 (6th Cir. Apr. 29, 1991).

Plaintiff is correct that the ALJ did not address his alleged cardiac impairment; however, the medical evidence of record revealed that plaintiff was taking no medication for his the left atrial enlargement condition and that "[s]o far it doesn't interfere with his work," although it did bother him when stressed (Tr. 201).  Although plaintiff reported that he had a "little" chest pain in

September of 2001, after he had "worked in the tobacco," the diagnosis was musculoskeletal chest pain (Tr. 183). Additionally, a heart catheterization procedure performed in February 2003 showed that the left ventriculogram demonstrated no wall motion abnormalities with an ejection fraction greater than 60%. (Tr. 209). The report also noted that there were no hemodynamically significant lesions identified and, although there were small plaques of 5 and 10 percent in the circumflex and left anterior descending coronary artery that were rather scattered, there were no significant lesions identified (Tr. 209). Thus, the foregoing medical evidence did not provide a basis to support a finding that plaintiff's alleged cardiac impairment was severe.

Plaintiff does not indicate in his argument the work limitations that were imposed by his alleged cardiac impairment. Additionally, the medical evidence of record fails to indicate that plaintiff's cardiac problem was severe or serious or that he was limited in any way by this condition. Consequently, the Magistrate Judge concludes that the ALJ fully reviewed the relevant medical evidence of record and committed no error in addressing or considering this non-severe condition.

**C.    the "worn-out worker exception"**

Plaintiff also argues that the ALJ erred in when formulating his hypothetical question to the VE by failing to incorporate therein the "worn-out worker exception" for those claimants over age 55 that is found at 20 C.F.R. § 404.1562 and SSR 82-63. 20 C.F.R. § 404.1562 provides, as follows:

> **20 C.F.R. § 404.1562 If you have done only arduous unskilled physical labor.**
>
> (a) If you have no more than a marginal education (see § 404.1564) and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) (see §§ 404.1520(c), 404.1521, and 404.1523), we will consider you unable to do lighter work, and therefore, disabled.
>
> Example to paragraph (a): B is a 58-year-old miner's helper with a fourth grade education who has a lifelong history of unskilled arduous physical labor. B says that he is disabled because of arthritis of the spine, hips, and knees, and other impairments. Medical evidence shows a "severe" combination of impairments that prevents B from performing his past relevant work. Under these circumstances, we will find that B is disabled.
>
> (b) If you are at least 55 years old, have no more than a limited education, and have no past relevant work experience. If you have a severe, medically determinable impairment(s) (see §§ 404.1520(c), 404.1521, and 404.1523), are of advanced age

8

(age 55 or older, see § 404.1563), have a limited education or less (see § 404.1564), and have no past relevant work experience (see § 404.1565), we will find you disabled. If the evidence shows that you meet this profile, we will not need to assess your residual functional capacity or consider the rules in appendix 2 to this subpart.

20 C.F.R. § 404.1562. *See also* SSR 82-63, 1981 WL 31390 (S.S.A.).

In this case, the ALJ requested the VE to characterize plaintiff's PRW. The VE responded that plaintiff's work with the highway department was medium and semi-skilled. (Tr. 305). The VE also responded that plaintiff had worked as a toll collector[2], which was light and unskilled, and that plaintiff's farm work was heavy and unskilled. (Tr. 305). Thus, plaintiff has not done "only arduous work," having performed work at both the light and medium exertion levels, and plaintiff has not done only unskilled work, having done work that is semi-skilled. *Id.*

Concerning plaintiff's education, plaintiff has a high-school equivalent education (Tr. 23, 288); therefore, plaintiff has more than a marginal education (6th grade level or less) and has more than a limited education (7th grade through 11th grade) (*see* 20 C.F.R. § 404.1564).

Consequently, the Magistrate Judge concludes that since plaintiff has not done "only arduous work" all of his life and since plaintiff has more than a marginal education, plaintiff does not meet the test for the "work-out worker exception" set out in paragraph (a) of 20 C.F.R. 404.1562. Additionally, since plaintiff has more than a limited education and has past relevant work experience, he also does not meet the test for the "work-out worker exception" set out in paragraph (b) of 20 C.F.R. 404.1562. Therefore, since plaintiff does not meet the criteria for a "worn-out worker," the "worn-out worker exception" is not applicable to this case, and the ALJ committed no error when he did not incorporate the "worn-out worker exception" in his hypothetical to the VE.

---

[2] In fact, the VE testified that plaintiff could return to his past light job as a toll collector. (Tr. 305).

9

**D.    ALJ's credibility finding**

Plaintiff also faults the ALJ for not finding his testimony concerning his pain and limitations

fully credible.  The ALJ's assessment of plaintiff's credibility is seen from the following excerpt

from the ALJ's decision:

> The claimant testified that he is unable to work due to constant left wrist pain, back
> pain, and left shoulder pain.  He explained that his back pain started 2½ years ago
> and is exacerbated by manual labor.  The claimant admitted, however, that he has
> never had an x-ray or MRI for his back pain.  He testified that he also suffers
> from poorly controlled diabetes, high blood pressure, high cholesterol, and acid
> reflux, but the claimant added that his blood pressure and cholesterol levels were
> controlled with medication.  The claimant estimated that he could walk ½ mile, stand
> for 45 minutes, sit for 2-3 hours, and lift 25-30 pounds from a table top before pain
> or fatigue would force him to stop or switch positions.  He added that he has no
> problems bending, stooping, breathing, or seeing, but he rated his hearing as "poor."
> The claimant also stated that he has no mental problems.  The claimant testified that
> his daily activities include watching television, light cooking, sweeping, making
> beds, playing with horses and dogs, feeding and watering horses (but not riding),
> attending church services, occasionally shopping, occasionally visiting family, and
> occasionally hunting and fishing with his grandson.

Tr. 20.

> After comparing the medical evidence with plaintiff's testimony, the ALJ then stated:

> The undersigned also granted limited probative weight to the claimant's testimony.
> Aside from the record of the claimant's multiple left upper extremity injuries, the
> preponderance of the record supports no other impairments or limitations.  During
> his February 2005 testimony, the claimant alleged that he had suffered from back
> pain for 2½ years, yet during a December 2003 examination with Dr. Coble - or 1 1/4
> years *before* his testimony and 1 1/4 years *after* his back pain allegedly started – he
> alleged no back pain.  Dr. Coble's examination also revealed no medical signs
> consistent with back pain or degenerative disc disease.  Moreover, while the
> claimant's testimony reveals that he alleges back pain beginning approximately in
> August 2002, the record is devoid of evidence reflecting such complaints.  The
> claimant made no emergency room visits due to back pain, and despite multiple
> examinations with Nadeem Shaikh, M.D., from September 2002 through January
> 2003, he never reported back pain during examinations for other complaints.  (Ex.
> 7F).  Despite his alleged back pain, Dr. Coble observed that the claimant "ambulated
> with ease" in December 2003.  (Ex. 10F).  The undersigned finds inconsistencies in
> the claimant's allegations cast significant doubt on the true breadth and depth of his
> back pain.

Tr. 21-22.

In determining whether a claimant is disabled, the Commissioner considers all symptoms,

including pain, and the extent to which those symptoms "can reasonably be accepted as consistent

with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a) (2005). When the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, as in this case, the Commissioner then evaluates the intensity and persistence of the symptoms to determine how those symptoms limit the claimant's capacity for work. See 20 C.F.R. § 404.1529(c)(1) (2005). In making this evaluation, the Commissioner considers the objective medical evidence as well as information from the claimant and from treating, examining, or other medical sources, as well as other factors, such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side-effects, and any other measures taken to alleviate the claimant's pain. See 20 C.F.R. §§ 404.1529(c)(2), (3) (2005).

In *Jones v. Commissioner of Social Security*, 336 F.3d 469 (6th Cir. 2003), the Sixth Circuit noted the critical distinction between an ALJ "disbelieving" a claimant and finding that the severity of the allegations was at odds with the medical evidence. Specifically, in *Jones*, the Sixth Circuit stated:

> . . . the ALJ can present a hypothetical to the vocational expert on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate. See Townsend v. Secretary of Health and Human Services, 762 F.2d 40, 44 (6th Cir. 1985); see also Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990) (holding that the ALJ had an adequate basis to discount Mr. Blacha's credibility, where his behavior and the medical evidence were inconsistent with his testimony.).

In this case, the ALJ's credibility finding was based on the lack of objective medical evidence to support plaintiff's subjective complaints of disabling back pain, and the ALJ documented the gaps in the medical evidence concerning plaintiff's complaints of back pain made to medical sources. The ALJ stated that he was relying on the large time gap between complaints, February 2000 to Dr. Templin's January 2005 report, and the apparently acute nature of plaintiff's February 2000 back pain complaints (which he found was an isolated incident), to determine that the medical evidence did not establish that plaintiff suffered from degenerative disc disease prior to expiration of his insured status, December 31, 2004. (Tr. 19).

11

It is well settled that in reviewing a case for substantial evidence, the court may not decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984). The rationale underlying this rule of law is that it is the ALJ, who has the opportunity to question and observe a claimant, is certainly in the best position to assess a claimant's credibility. Consequently, the Magistrate Judge finds no merit in plaintiff's argument that the ALJ erred in finding plaintiff's testimony concerning his impairments and how they impacted his ability to perform work activities only partially credible.

**D.     ALJ's failure to comply with SSR 00-4p (2000)**

Plaintiff also contends that the ALJ erred by failing to comply with SSR 00-4p (2000), for not asking the VE if the alternative jobs that the VE identified that plaintiff could perform were consistent with plaintiff's RFC or whether there is a conflict with the job descriptions set out in the Dictionary of Occupational Titles ("DOT"), and if there was a conflict, to resolve any discrepancy between the two.

Social Security Ruling ("SSR") 00-4p instructs as follows:

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT. When there is an apparent unresolved conflict between the VE evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled.

A review of the colloquy between the ALJ and the VE reflects that the ALJ did ask the VE if the jobs she identified that plaintiff could perform were consistently classified in the DOT, and the VE answered, "Yes, sir." (Tr. 306). Thus, the ALJ did comply with SSR 00-4p.

Concerning the hand packager job identified by the VE, plaintiff has attached a page from the DOT to his brief in support of his argument that that job would require constant reaching, handling, and fingering with both hands. However, a review of that page from the DOT does not support plaintiff's argument.

In addition to the packaging jobs in a factory setting, the VE also identified inspecting jobs, janitorial jobs, and industrial cleaning jobs that plaintiff could perform. (Tr. 306). The VE was very straight-forward that her testimony was premised on the condition that plaintiff could use his left hand

as a "helping" hand only. (Tr. 306). Based on her expertise as a vocational expert, the VE stated that her testimony was consistent with the DOT. *Id.* Consequently, as previously stated, the ALJ complied with SSR 00-4p.

Furthermore, SSR 00-4p merely requires the ALJ to resolve conflicts between the VE's testimony and the DOT; it does not require the ALJ to accept the DOT over the VE's testimony. *See* SSR 00-4p, 2000 WL 1898704 (S.S.A.) ("Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resole the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information."); *see also Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (ALJ may rely on vocational expert testimony contrary to the <u>DOT</u>); *Colwell v. Chater*, 98 F.3d 1341 (Table), 1996 WL 557773 (6th Cir. Sept. 30, 1996).

Therefore, the Magistrate Judge concludes that plaintiff's argument that the ALJ failed to comply with SSR 00-4p is without merit.

## V. CONCLUSION

Having reviewed the administrative record, including the medical evidence, the cross-motions for summary judgment, and the applicable law concerning judicial review of the Commissioner's decision, the Magistrate Judge concludes that the Commissioner's decision that plaintiff is not disabled is supported by substantial evidence.

Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's motion for summary judgment [DE #7] be **DENIED**, that the defendant's motion for summary judgment [DE #8] be **GRANTED**, and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court

13

of Appeals.  28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e).

This $\underline{22^{nd}}$ day of September, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

14